121 So.2d 797 (1960)
Martha Joe FURLONG, Sylvia Carnes, and Sally Leybourne, by Leo A. Furlong, Jr., Her Next Friend, Appellants,
v.
CORAL GABLES FEDERAL SAVINGS & LOAN ASSOCIATION, and Charlotte Leybourne, Individually and As Executrix of the Estate of James G. Leybourne, Deceased, Appellees.
Martha Joe FURLONG, Sylvia Carnes, and Sally Leybourne, by Leo A. Furlong, Jr., Her Next Friend, Appellants,
v.
Charlotte LEYBOURNE, Individually and As Executrix of the Estate of James G. Leybourne, Deceased, and the Coral Gables Federal Savings & Loan Association, Appellees.
Nos. 59-326, 59-379.
District Court of Appeal of Florida. Third District.
June 23, 1960.
Rehearing Denied July 28, 1960.
*798 Turner, Hendrick, Fascell & Brake, Coral Gables, for appellants.
Redfearn, Ferrell & Simon, Miami, for appellee Charlotte Leybourne.
Padgett, Teasley & Niles, Coral Gables, for appellee Coral Gables Federal Savings & Loan Assn.
CARROLL, CHAS., Judge.
The appeals in these two cases, which were consolidated for argument, are directed to orders entered in a suit for declaratory decree. The appellants Martha Joe Furlong, Sylvia Carnes and Sally Leybourne are surviving children of James G. Leybourne, deceased. The appellee Charlotte Leybourne is a widow of the deceased and the step-mother of the appellants. The appellee, The Coral Gables Federal Savings and Loan Association, hereinafter referred to as the Federal, was a creditor of the deceased, holding a mortgage on the latter's homestead property.
James G. Leybourne died October 1, 1958. He left a will which made his widow the sole beneficiary and named her as executrix. Approximately a year prior to his death the deceased and his widow, who was then his wife, had joined in making a note to the Federal in the amount of $27,500, and in the execution of a mortgage to the Federal to secure the same, encumbering the homestead property, the title to which was held by the deceased.[1]
Appellants filed their complaint for declaratory decree against the widow individually and as executrix of the estate of the deceased and against the Federal. In addition to the facts just stated, they alleged that the balance remaining unpaid on the note secured by the mortgage on the homestead property exceeded $26,000; that the Federal had failed to file a claim in the estate within the time allowed for filing such claims; that the appellants had filed a claim in the estate for themselves;[2] *799 that the widow had made demand on the appellants to pay the principal owing on the indebtedness for which the homestead property was mortgaged; and plaintiffs prayed for the following relief:
"That this Court determine which party or parties have the primary obligation to pay the note for which said homestead premises were mortgaged as security.
"That if the estate of James A. [sic] Leybourne, deceased, be decreed to owe any of said sum due on said note, this Court thereupon decree either that said sum be paid at once to reduce the principal balance in advance, or provide for placing said sum in escrow, to be paid periodically.
"That if the second wife, Charlotte Leybourne, be decreed to owe any of said sum due on said note, this Court thereupon decree either that said sum be paid at once from the funds held by said Charlotte Leybourne to reduce said funds held by the said Charlotte Leybourne to reduce said principal balance in advance or provide for placing said sum in escrow from said funds held by the said Charlotte Leybourne.
"That this Court declare that the Coral Gables Federal Savings and Loan Association be estopped from foreclosing the interest of plaintiffs in and to said real property for so much of said obligation as may be due and payable from said estate if no claim for said sum is filed in said estate by said Federal."
The widow answered, contending that as life tenant she was responsible only for payment of interest on the homestead mortgage and that the plaintiffs were responsible for payment of the principal, and averring that she was entitled to an equitable lien for principal she had advanced on the mortgage indebtedness but not seeking affirmative relief therefor in that proceeding.
The Federal filed a motion to dismiss, which was granted. Motions for summary judgment were filed by the plaintiffs, and by the defendant Charlotte Leybourne individually, and as executrix. The plaintiffs' motion was denied and the widow's motion was granted.[3]
*800 We affirm the action of the chancellor in dismissing the Federal from the cause, which was the subject of the appeal in case No. 59-326. The Federal, as the holder of a note made by the deceased and his wife and secured by a mortgage on property owned by the deceased, was entitled, under the applicable law, to elect whether to file a claim in the estate for the amount due under the mortgage debt, or to waive the filing of claim without loss of right to foreclose, and to look only to the security under the mortgage as a means of recovery. See § 733.16(1) (b), Fla. Stat., F.S.A.[4]; In re Simpson's Estate, Fla.App. 1959, 113 So.2d 766; 22 Fla.Jur., Mortgages, § 508; 14 Fla.Jur., Executors and Administrators, §§ 136, 140.
We also affirm the chancellor in case No. 59-379, on his ruling as made in the summary decree. The main question in case No. 59-379, as raised by appellants, was whether the doctrine of exoneration, by which devisees of real property encumbered by a non-purchase money mortgage are entitled to have the lien on the mortgage discharged by payment from the personalty of the estate, was applicable as part of the law of Florida to require the executrix to pay the outstanding debt owed to the Federal.
It is clear that such doctrine could have no application in this case, because of the failure of the mortgagee to file a claim in the estate. This was determined by the Supreme Court in the case of In re Comstock's Estate, 143 Fla. 500, 197 So. 121, 122. In that case, one Harry Comstock and his wife had executed a mortgage upon his homestead property. Upon Comstock's death the widow acquired a life estate in the homestead with a vested remainder in the decedent's lineal descendants. Comstock's will directed the payment of debts, and set up a trust of the residue of his property. The holder of the mortgage on the homestead failed to file any claim against the decedent's estate. Upon petitions by the testamentary trustee and executor, the county judge directed the trust company to pay off and discharge the mortgage. That ruling was affirmed by the circuit court, but later was reversed on an appeal taken to the Supreme Court when the question presented was as follows:
"Where a person dies leaving homestead real estate which is subject to a mortgage, and the mortgagee fails to file a claim against the decedent's estate within eight months from the date of the first publication of the notice to creditors or thereafter, may the probate court direct the payment of the mortgage debt out of the decedent's estate?"
In holding that the estate could not pay the mortgagee when the mortgagee had failed to file claim, the Supreme Court said (197 So. at page 124):
"So, while it may be that the legislature has the power to make provisions by which the results sought here to be obtained would prevail, it has not done so. If there had been no mortgage securing the debt, the creditor, by failure to comply with the provisions of the statute, supra, would have lost all right to collect the debt and those who inherited the estate or acquired it by devise would then have acquired it *801 free from that debt. It necessarily follows that those who acquire by devise an interest in decedent's property other than the homestead, acquired it free from that debt.
"While our sympathies are with the beneficiaries of the homestead, the law must be applied as we find it. The courts have no more authority to deprive one set of heirs or beneficiaries of their legal rights than they have to deprive another set of heirs or beneficiaries of their legal rights.
"The provisions of the law, as adopted in the wisdom of the legislature, have fixed it so that no property left by the decedent is available for the payment of this debt secured by a mortgage, except the mortgaged property, and the fact that that mortgaged property happened to be a homestead does not change the application of the law in this regard."
The Comstock case was followed by the court of appeal in the second district, in the case of In re Simpson's Estate, supra, Fla. App. 1959, 113 So.2d 766. There a mortgagee of the decedent's homestead, after having filed a claim in the estate covering the mortgage indebtedness, subsequently withdrew it and elected to rely solely upon the security of the mortgage. The widow petitioned for an order requiring the executor to pay off the indebtedness from estate funds. On denying the petition the appellate court said (113 So.2d at page 769):
"In the case now before this Court the mortgagee filed a claim but withdrew the same, which was a detriment to the mortgagee and not to the estate. If she had not withdrawn her claim she would have had the assets of the estate in addition to the security of the homestead to protect her money, but by withdrawing this claim, she loses the security of the assets of the estate and has to look solely to the mortgage security for payment.
* * * * * *
"The Judge then concluded that there was no legal basis for an order directing the executor to pay the mortgage indebtedness to Ethel May Simpson, she having withdrawn her claim as she had the right to do. He stated it was the duty of the executor to pay only those claims which were valid and subsisting demands against the estate."
We have considered also the contention of the appellants that the claim filed by them was sufficient to overcome the failure of the mortgagee to file a claim. The claim as filed by the appellants could have no such effect. Even if appellants could have filed a claim for or on behalf of the mortgagee, a question which we do not decide, the claim which they did file could not fill the void which resulted from the choice of the Federal, as mortgagee, not to file a claim. Appellants were not creditors under the mortgage indebtedness, and the Comstock and Simpson cases precluded the estate from paying out the amounts sought by the appellants in absence of a claim filed by the mortgagee.
The appellants having failed to demonstrate error, the orders appealed from are affirmed.
Affirmed.
HORTON, C.J., and PEARSON, J., concur.

On Petition for Rehearing
PER CURIAM.
The petition for rehearing of appellants included the following contention:
"This Court overlooked the request of appellants, in the court below and in *802 this Court, to determine the liability of the appellee in her individual capacity as co-maker of the note, separate and apart from liability in a representative capacity, as executrix of the estate.
"The Court's opinion deals only with appellee's duties as executrix of the estate. However, she was a co-maker of the note and was sued as such individually. On pages 16-17 of appellant's brief we cited many cases and statutes holding that, as between a co-maker of a note and the owner of property pledged as security for the note, the co-maker is primarily responsible for payment of the note, and the security owners are only secondarily liable. Therefore, if the children have to pay the note they may recover from the appellee as an individual.
"The opinion filed by this Court completely overlooks this issue. Since this is a suit for declaratory decree, and since the Court was asked to decide this point, it should render an opinion on this question."
The questions as to the effect of the widow's personal liability on the mortgage as a co-maker of the mortgage note, as they bear on the rights, remedies and defenses of the parties, were not determined in the decree, but were within the pleadings and before the court, and we are of the opinion that for substantial justice to be done between the parties such questions also should be determined.
Therefore, this cause is hereby remanded with directions to the chancellor to declare the rights and liabilities of the parties in the respects hereinabove referred to, upon consideration of the pleadings and evidence and with the aid of such further proceedings and evidence as may come before the chancellor in his discretion. To this extent our opinion and judgment filed June 23, 1960, is amended, but in other respects is adhered to. Other grounds of the petition for rehearing have been considered and are denied in Case No. 59-379. The petition for rehearing in Case No. 59-326 is denied.
It is so ordered.
HORTON, C.J., and PEARSON and CARROLL, CHAS., JJ., concur.
NOTES
[1] Under Florida law the homestead property could not be the subject of devise but passed to the appellants as the lineal descendants with a life estate to the widow. § 731.27 and § 731.05(1), Fla. Stat., F.S.A.
[2] The material part of the claim as filed by the appellants in the probate proceedings was as follows: "Deceased was the owner of Lot 9 in Glenvar Heights Subdivision as recorded in Plat Book 53 at Page 84 of the Public Records of Dade County, Florida, also known as 7980 S.W. 68th Terrace, Miami, Dade County, Florida, which was free and clear of any mortgage and which was the homestead of deceased. On or about October 23, 1957, the deceased and Charlotte Leybourne, his wife, executed a promissory note in favor of the Coral Gables Federal Savings & Loan Association in the approximate amount of Twenty-seven Thousand Five Hundred Dollars ($27,500.00) and further executed a mortgage encumbering said homestead property to secure said indebtedness. Said indebtedness was a personal obligation of the deceased and Charlotte Leybourne and claimants believed and, therefore, alleged that upon the death of James G. Leybourne the indebtedness became due and payable either by Charlotte Leybourne, as sole surviving maker or by this estate or by both of them. On the death of deceased, title to said homestead passed to claimants subject to said mortgage. Should said indebtedness not be promptly paid by this estate or the said Charlotte Leybourne, or both of them, it will be necessary to pay said indebtedness to protect their interest in said homestead property and claimants will, thereupon, become creditors of this estate in the amount so paid or so much of said amount as should be paid by this estate, which amount may be up to and including the amount of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00) plus interest and attorneys' fees and court costs. * * * [T]hat the above and foregoing is an itemized statement of their claim against said estate; that said account is just, true and correct, and no part of same has been paid; that there are no deductions or set-offs of any kind except such as are specified in said claim; * * *"
[3] The summary final decree included the following holdings:

"The said real estate above described was homestead property at the time of the death of the said James G. Leybourne and could not be disposed of by his last will and testament; however, upon the death of said deceased the title to said homestead property descended, a life-estate therein to Charlotte C. Leybourne, his widow, with vested remainder to Martha Joe Furlong, Sylvia Carnes and Sally Leybourne, his said lineal descendants in being at the time of his death, subject to the mortgage thereon in favor of the said Coral Gables Federal Savings & Loan Association.
"It is the obligation of the defendant, Charlotte C. Leybourne, the surviving widow, as the owner of the life estate in said homestead property, to pay the interest on said mortgage, as the same accrues, and it is the obligation of the plaintiffs, Martha Joe Furlong, Sylvia Carnes and Sally Leybourne, as the remaindermen, to pay the principal of said mortgage, as the same accrues. If either the said life tenant or the said remaindermen pay, or have paid, any portion of said mortgage which the other is obligated to pay, said party or parties making payment shall be entitled to contribution from the other or others for the amounts so paid and a lien on the interest of the other or others in said homestead to enforce the same."
[4] "Provided further, that the lien of any duly recorded mortgage and the lien of any person in possession of personal property and the right to foreclose and enforce such mortgage or lien shall not be impaired or affected by failure to file claim or demand as hereinabove provided, but such failure shall bar the right to enforce any personal liability against the estate, and the claimant shall be limited to the enforcement of the mortgage or lien against the specific property so mortgaged or held. * * *"